**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**SEA WORLD, LLC,**

    Plaintiff,

       v.

**SEAFARERS, INC., ET AL.,**

    Defendants.

Civil Case. NO. 16-1382 (PG)

**OPINION AND ORDER**

Pending before the court is plaintiff Sea World LLC's ("Sea World" or "Plaintiff") motion to remand (Docket No. 7). In its motion, Plaintiff requests this court remand the above-captioned complaint back to state court on two grounds: that the notice of removal is procedurally defective and that no diversity jurisdiction exists. For the reasons set forth below, this court **DENIES** Sea World's request.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On February 2, 2016, Sea World filed the original complaint before the Puerto Rico Court of First Instance against Seafarers, Inc. ("Seafarers") and Aza Food Corp., Inc. ("Aza") requesting damages and injunctive relief. In short, Plaintiff alleges that Seafarers unilaterally terminated their exclusive distribution agreement in violation of the Puerto Rico Dealer's Act, also known as Puerto Rico Law 75, P.R. LAWS ANN. tit. 10, § 278. See Docket No. 18-1. According to Plaintiff, Aza unlawfully and intentionally interfered with the contractual distribution relation between Seafarers and Sea World. Aza's appropriation of the distribution of Seafarers' products in Puerto Rico caused Sea World damages, as alleged, in violation of Puerto Rico's general tort statute, Article 1802 of the Civil Code, 31 P.R. STAT. ANN. § 5141. Id.

On March 4, 2016, Seafarers removed the case to this court on the basis of diversity jurisdiction pursuant to 28. U.S.C. § 1332(a).[1] Seafarers is a corporation organized under Florida law whereas Sea World

---

[1] The court notes that prior to the notice of removal now before the undersigned, on January 5, 2016, Seafarers had filed a Complaint for Declaratory Judgment before this court, Civil Case 16-1021(JAG), requesting that judgment be entered in its favor declaring, *inter alia*, that Sea World was not entitled to protection under the Puerto Rico Dealer's Act Law No. 75 and that their business relationship was terminable at will. See Docket No. 1 at Civil Case No. 16-1021(JAG).

is a Puerto Rico corporation. See Docket No. 1, 3, 18. Seafarers argues that Sea World fraudulently joined Aza, a Puerto Rico corporation, in the state court action by adding a meritless tortious interference claim against the latter with the sole purpose of defeating federal jurisdiction. Id. On March 8, 2016, Aza filed an informative motion notifying the court of its consent to Seafarers' request for removal, see Docket No. 10.

In its motion to remand, Sea World now argues that removal was procedurally improper because Aza did not join the request within 30 days of being served as required by 28 U.S.C. § 1446(b). See Docket No. 7. Sea World also claims that the doctrine of fraudulent joinder is inapplicable to the case at hand because it properly pleaded a claim against Aza for tortious interference with its exclusive dealership contract with Seafarers. Id.

Seafarers opposed Sea World's motion to remand to state court. It first argues that Aza's joinder to its request for removal cured the procedural defect. See Docket No. 24. Second, Seafarers reasserts its claim for removal on the grounds that the Plaintiff failed to allege that the purported distribution agreement was exclusive and thus entitled to protection under Law No. 75. As such, the agreement could not be subject to tortious interference. Id.

Sea World subsequently replied opposing the arguments set forth in Seafarers' response. See Docket No. 41.

## II.  LEGAL STANDARD

"The district courts of the United States are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." In re Olympic Mills Corp., 477 F.3d 1, at 6 (citing Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377 (1994)). "A cause of action may be maintained in federal court only if it involves a question of federal law, or if the controversy is between citizens of different states and the amount in controversy exceeds $75,000." Hall v. Curran, 599 F.3d 70, 71 (1st Cir.2010) (citing 28 U.S.C. §§ 1331, 1332).

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing

the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he defendants may remove the action to federal court ... provided that no defendant 'is a citizen of the State in which such action is brought.'" Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 107-108 (1st Cir. 2014) (citing 28 U.S.C. § 1441(b)(2)).

"[R]emoval statutes are strictly construed ... and defendants have the burden of showing the federal court's jurisdiction." Danca v. Private Health Care Systems, 185 F.3d 1, 4 (1st Cir.1999) (internal citations omitted). "When plaintiff and defendant clash about jurisdiction, uncertainties are construed in favor of remand." Asociacion de Detallistas de Gasolina v. Shell, 380 F.Supp.2d 40, 43 (D.P.R. 2005) (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir.1994)).

### III. DISCUSSION

#### A. Unanimity Requirement

Sea World's first objection to the removal is grounded on co-defendant Aza's untimely consent to the removal of the action from state court. Pursuant to the applicable statute, "[d]efendants must file their notice of removal within 30 days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ... ." Universal Truck, 765 F.3d at 108 (citing 28 U.S.C. § 1446(b)(1)). According to Sea World, however, Aza was served with the complaint on February 4, 2016, but joined Seafarers' notice of removal over thirty days later on March 8, 2016 (Docket No. 10).

Relying on the First Circuit's holding in Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72 (1st Cir. 2009), Seafarers argues that despite its delay, the procedural defect was cured upon Aza's subsequent consent. In Esposito, the First Circuit stated that "[w]here the action involves multiple defendants, however, the right of removal is subject to the so-called 'unanimity requirement.'" Id. at 75 (citing Chicago, Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 247-48 (1900)). The Court further stated that "[t]he defect in the removal process resulting from a failure of unanimity is not considered to be a jurisdictional defect, and unless a party moves to remand based on this defect, the defect is waived and the action may proceed in federal court." Esposito, 590 F.3d at 75 (internal citations omitted).

Here, the defect was not waived as Sea World moves to remand on the purported defect, among other grounds. But despite being mindful of the principle that removal statutes are to be narrowly construed, the Court in Esposito refused to "establish a wooden rule" as to the way in which the unanimity requirement may be satisfied. Id. at 76-77. The Court then held that even if co-defendant Home Depot failed to explicitly consent to removal within the statutorily prescribed thirty-day period, "resulting in a technical defect in the removal process, the defect was subsequently cured when Home Depot opposed Esposito's remand motion, thereby clearly communicating its desire to be in federal court." Id. at 77. To hold otherwise "would place form before function." Id.

In light of the First Circuit's conclusions in Esposito, this court also finds that granting Sea World's motion to remand based on Aza's two-day delay would not serve the purposes of the unanimity requirement or the interests of justice.[2] Although it would have been preferable that Aza had timely joined the notice of removal, we hold that its subsequent written consent suffices to cure the defect stemming from its belatedness. Therefore, Sea World's motion to remand on those grounds is hereby **DENIED**.

**B. Fraudulent Joinder**

"Fraudulent joinder is a judicially created doctrine that provides an exception to diversity requirements." Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir.1998). This doctrine "is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." Figueroa Berrios v. BASF Corp., No. 05-1317, 2006 WL 2456407, at *1 (D.P.R. August 22, 2006) (citing Briarpatch Limited, L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2nd Cir.2004)). Thus, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Id. See also Polyplastics, 713 F.2d at 877 (1st Cir.1983) (finding that a party

---

[2] In addition, if Seafarers argument that Aza was fraudulently joined holds, which shall be discussed *infra*, Aza's consent to the removal was unnecessary. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship.").

fraudulently joined is disregarded in determining diversity of citizenship); Chesapeake & O. R. Co. v. Cockrell, 232 U.S. 146, 152 (1914) ("A civil case, at law or in equity, presenting a controversy between citizens of different states, and involving the requisite jurisdictional amount, is one which may be removed by the defendant, if not a resident of the state in which the case is brought; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.").

When a resident defendant is joined, "the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). To that effect, the First Circuit has held that "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." Polyplastics, 713 F.2d at 877 (1st Cir.1983) (internal citations omitted). In fact, the First Circuit recently acknowledged that it is generally recognized that "under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Universal Truck, 765 F.3d at 108 (citing Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir.1992) ("[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?"); McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent")).

In its notice of removal, Seafarers asserts that Sea World states no cognizable cause of action against Aza. According to Seafarers, Plaintiff's claim against Aza for tortious interference fails to meet the required criteria. See *Second Notice of Removal*, Docket No. 18. Firstly, Seafarers contends that it never appointed Sea World as an exclusive or

sole distributor of its seafood products, and no written agreement exists to that effect. See id. at page 6. Second, Seafarers and Sea World did not set the term or duration of any oral or written agreement. Accordingly, "[s]ince no exclusive distribution agreement with a definite term exists between Seafarers and Sea World, Aza could not have tortiously interfered in the commercial relationship between Seafarers and SeaWorld as a matter of law." Id. at page 4. Finally, according to Seafarers, the fact that Sea World filed its Law No. 75 complaint in state court one month after Seafarers had sought declaratory relief in federal court evinces Sea World's purported attempt to defeat federal jurisdiction. See Docket No. 18 at page 4.

On the other hand, Sea World seeks the case be remanded back to state court arguing that even distribution contracts with no fixed term are not terminable at will. And seeing as it pleaded a proper tortious interference claim against Aza, the Plaintiff claims the fraudulent joinder doctrine does not apply. See Docket No. 7.

In order to determine if it's reasonably possible that the Puerto Rico's highest court would find that the complaint states a claim of tortious interference upon which relief may be granted against Aza, the court will review the allegations in the complaint. When assessing a plaintiff's ability to establish a cause of action against the non-diverse party in state court, "the court typically 'conducts a [Rule] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the in-state defendant.'" Geva Eng'g Grp., Corp. v. Furmanite Am., Inc., 844 F. Supp. 2d 225, 229 (D.P.R. 2012) (citing Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 376 (5th Cir.2006)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir.2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted).

In the complaint, Sea World alleges that "on or about 2012, Sea World began buying fish and seafood from Seafarers for distribution in

small quantities in Puerto Rico," *Complaint*, Docket No. 18-1 at ¶ 10, but on October of 2013, the President of Seafarers contacted the President of Sea World to increase the volume of business in Puerto Rico and possibly "giving Sea World exclusive distribution rights to Seafarers products," id. at ¶ 11. According to Sea World, they reached such an agreement. Id. at ¶ 13. As a result of the exclusive distribution agreement, Sea World increased its purchases of Seafarers' products, stored them, promoted them and sold them to its clients in Puerto Rico. Id. at ¶¶ 14-17. However, on or about June 15, 2015, "Seafarers without justification, notified Sea World by means of electronic mail of their illegal, arbitrary and unilateral decision to terminate the exclusive distribution contract that existed between the parties." Id. at ¶ 22. Despite "all the work performed by Sea World and the investment made in human and financial resources to make the Seafarers products known in Puerto Rico," id., Seafarers notified Sea World in that same e-mail that it would be selling their products in Puerto Rico directly through Aza Food Corp., which the Plaintiff claims interfered with the contractual relation between Seafarers and Sea World. Id. at ¶ 24. Sea World asserts that Aza interfered with its contractual relation with Seafarers despite knowing of the exclusive distribution relation between them, causing Sea World damages in the amount of lost sales. Id. at ¶¶ 38-42.

To prevail on a claim of tortious interference with a contractual relationship under Puerto Rico law, "a plaintiff must show: (1) a contract with which the defendant interferes, (2) tortious action by the defendant with knowledge of the contract's existence, (3) damage to the plaintiff, and (4) a causal relationship between the tortious conduct and the damage." R.R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc., 121 F. App'x 870, 871 (1st Cir. 2005) (citing Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc., 780 F.2d 1077, 1081-82 (1st Cir.1986)). "As the Puerto Rico Supreme Court has emphasized, the first element-existence of a contract for a fixed period of time-is 'indispensable,' … ." Id. (citing Dolphin Int'l, Inc. v. Ryder Truck Lines, Inc., 27 P.R. Offic. Trans. 869, 1991 WL 735928 (1991)).

As to the second factor, the First Circuit has stated that "[u]nder Puerto Rico law, the 'fault' element of tortious interference requires a stronger showing," New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287

F.3d 1, 10 (1st Cir. 2002), seeing as the "plaintiff must show that the defendant intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." Id. (citing Jusino Figueroa v. Walgreens of San Patricio Inc., 2001 P.R. Dec. 150, 2001 WL 1414693, at *5 (P.R.2001)). "Thus, to ground liability the defendant's actions must at least evince a quasi-delictive intent." New Comm Wireless, 287 F.3d at 10.

The controversy now before the court, to wit, whether Sea World properly raised a tortious interference claim against Aza, is not new. This court has previously laid out the requisite elements for such a cause of action in several other cases filed pursuant to the Puerto Rico Dealer's Act and Article 1802. These cases have all stated that an exclusive dealership contract with a fixed term is an essential component of the claim of tortious interference. See Geva Eng'g Grp., Corp. v. Furmanite Am., Inc., 844 F. Supp. 2d 225, 229 (D.P.R. 2012) ("In regards to the first element, the Supreme Court of Puerto Rico has stated that to be able to state a claim for tortious interference, the contract must be for a fixed time period."); Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV, 828 F. Supp. 2d 425, 430 (D.P.R. 2011) ("Regarding the first element requiring the existence of a contract, the Supreme Court of Puerto Rico has stated that a fixed time period in the contract is essential to a tortious interference claim."); A.M. Capen's Co. v. Am. Trading & Prod. Corp., 200 F. Supp. 2d 34, 49 (D.P.R. 2002) (Accordingly, pursuant to Puerto Rico's Supreme Court, tortious interference can only occur under two circumstances: first, when Law 75 is applicable; and secondly, when, notwithstanding Law 75's inapplicability, the contract nevertheless has a fixed expiration term. Tortious interference can only be present under these two circumstances."). But in an attempt to avoid the inevitable, Sea World points out that the fixed term requirement outlined *supra* was established by the Supreme Court of Puerto Rico in an employment case[3] that is thus distinguishable from the matter at hand. However, the existing caselaw does not favor Plaintiff's position and this court is not persuaded.

---

[3] See Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 P.R. Dec. 869, 1991 WL 735928 (1991).

After careful review, the court finds that the complaint is devoid of any allegations regarding the fixed term of expiration OF THE purportedly exclusive dealership contract BETWEEN Sea World and Seafarers. Sea World thus failed to properly set out a claim of tortious interference against Aza. Accordingly, removal is not defeated by the joinder of a Aza, a non-diverse party, and this court must **DENY** the pending motion to remand.

### IV. CONCLUSION

Pursuant to the foregoing, this Court hereby **DENIES** plaintiff Sea World's motion for remand (Docket No. 7).

**SO ORDERED.**

In San Juan, Puerto Rico, June 10, 2016.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
SENIOR UNITED STATES DISTRICT JUDGE